Jack Holder v. Commissioner.
Holder v. Commissioner
Docket No. 17394.
United States Tax Court
1952 Tax Ct. Memo LEXIS 340; 11 T.C.M. (CCH) 91; T.C.M. (RIA) 52021; January 29, 1952
*340 The respondent has determined a deficiency and the record contains many facts supporting it. Petitioner introduced no evidence tending to show the respondent's determination to be in error. Held that the deficiency as determined is sustained. Hobart F. Atkins, Esq., 724 Market St., Knoxville, Tenn., for the petitioner. Homer F. Benson, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined a deficiency in income tax for the calendar year 1943 in the sum of $95,076.01. The year 1942 is involved because of the provisions of the Current Tax Payment Act of 1943. The issue is whether petitioner reported the entire amount of his one half of the partnership net income of a business known as the Newport Liquor Store for the taxable year, 1943. Findings of Fact Petitioner is an individual residing in Chattanooga, Tennessee. His returns for the calendar years here in question were filed with the collector of internal revenue for the district of Tennessee. In 1941 the petitioner formed a partnership with Otha and Myrtle Baxter to engage in the retail liquor business at Newport, Tennessee, under the name *341 of Newport Liquor Store. The petitioner contributed $4,500 and the Baxters a similar amount, making at total capital of $9,000 in the business. Petitioner was to receive 50 per cent of the net earnings and participate to the extent of 50 per cent in the losses. During the period of the existence of the Newport Liquor Store, Cocke County, Tennessee, was the only county in the state in which liquor was permitted to be sold by law, with the exception of Shelby, Davidson, Hamilton and Knox Counties, in which the large cities of Nashville, Memphis, Chattanooga and Knoxville are located. The Newport Liquor Store opened business in August of 1941. Both of the Baxters and petitioner worked in the store and actively carried on the business. In the fall of 1942 petitioner entered the United States Coast Guard and, until his discharge in 1945, was absent from Newport, except for infrequent visits home on leave. Upon his entering the Coast Guard the petitioner gave Myrtle Baxter a power of attorney to act for him in all matters pertaining to the operation of the Newport Liquor Store and to look after his income tax returns and payments. The Newport Liquor Store maintained a bank account with *342 the Merchants & Planters Bank of Newport, Tennessee. All checks during the taxable period were signed Myrtle Baxter and Jack Holder by Myrtle Baxter. The license of the Newport Liquor Store was to sell liquors at retail. The contract of partnership of the parties was entirely verbal. Petitioner had known the Baxters for some years. No regular books of account were kept by the partnership. There is no record of an account set up in any form to show the capital account and debits or credits thereto of the individuals interested. The only records maintained were invoices showing liquor purchased for resale and bank statements showing deposits made in the Merchants & Planters Bank and withdrawals of such deposits together with the canceled checks evidencing such withdrawals. A partnership information return was filed by the Newport Liquor Store for the period August 16, 1941, when it started business, to January 1, 1942. This return reported an income of $16,795.43, with deductions totaling $2,964.92 and net income of $13,830.51. For the calendar year 1942 a partnership information return of income was filed for the business, reporting income of $58,835.58 with deductions of $8,343.41, *343 or net income of $50,492.17. No partnership return was filed for the business for the year 1943. However, an individual income tax return was prepared by an accountant for the petitioner under the direction of Myrtle Baxter, which reported, as his one half interest in the net income of the partnership for the year 1943, the sum of $37,865.46, of a total net income of the partnership in that year of $75,730.92. This return was not signed but was accepted by the collector. During the year 1943 payments were made to the collector on account of petitioner's income tax in the sum of $20,651.81. There was also a payment of $9,014.01 as income tax of Myrtle and Otha Baxter. These payments were made by Myrtle Baxter from funds of the partnership. During the period of more than a year, prior to his entrance into the Coast Guard, that petitioner worked in the Newport Liquor Store, he drew $50 a week against his account. These withdrawals of $50 per week ceased upon his entering the Coast Guard. The manufacture of liquor ceased in 1942 because of war necessities. Liquor became very scarce and resultingly high-priced in the territory served by the Newport Liquor Store. Much of the liquor *344 used by the ultimate consumer was sold to them by bootleggers who obtained exorbitant prices and who, in turn, were charged high prices by those from whom they obtained this liquor for resale. During the year 1943 the Office of Price Administration permitted a retail liquor dealer to sell whiskey at a price not in excess of 33 1/3 per cent above his cost. Wines and some other liquors were allowed a higher mark-up. In 1943 the sale of liquor in Cocke County was prohibited by law, and the Newport Liquor Store ceased operations after disposing of its inventory. In December of that year, after payment of its debts and obligations, it had a balance in bank in the sum of $101,875.45. This amount was withdrawn on two checks of equal amount made payable to petitioner and Otha Baxter. Petitioner received payment of his check of $50,937.48 at that time. In each of the taxable years, at direction of Myrtle Baxter, an audit was made of the business of Newport Liquor Store for the purpose of the preparation by the auditor of partnership returns for the business and individual returns for the partners. In that audit the accountant merely took the amounts deposited in bank as constituting gross *345 receipts of the partnership. No record was maintained by the partnership of individual sales and the amount of money received therefor. The records maintained by the Newport Liquor Store were insufficient for the determination of the actual gross and net income of the business. When this condition was encountered by the revenue agents from the office of the collector of internal revenue, an audit report was prepared, reconstructing income upon the basis of computing gross sales in the amount of gross purchases plus 33 1/3 per cent as a mark-up, the maximum mark-up allowed under O.P.A. This action was taken by the revenue agents upon the basis of information which they determined to be accurate, that sales of liquor in the territory served by the Newport Liquor Store were made during the year 1943 at not only a mark-up of 33 1/3 per cent but in many cases at a price much higher than this, and that such prices were received irrespective of whether the sales were in retail or wholesale quantities. Upon this basis the revenue agents computed gross receipts for the year 1943 as in the sum of $1,246,265.27 upon goods sold costing $934,698.95, or a gross profit of $311,566.32. Against this *346 profit there were allowed as expenses for that year $4,902.05, leaving a net profit of $306,664.27. From this net income the agents deducted the amount of $7,279.41 as income reported by one Bernice Gorman, leaving net income of the partnership for that year of $299,384.86. The facts in connection with the operations of Bernice Gorman, under the name of Lucky Liquor Store, are not revealed by the record. This business appears to have been operated for a short time by this individual with money furnished by the partnership, but was closed out and its inventory taken over and sold through the Newport Liquor Store. At the hearing the parties stipulated that the cost of goods sold by the Newport Liquor Store during the calendar year 1943 was in the total amount of $766,629.41, and that the cost of goods sold by the Lucky Liquor Store during the calendar year 1943 was $162,599.78. The parties further stipulated that expenses of the Newport Liquor Store for 1943 were $4,902.05 and that the expenses of the Lucky Liquor Store for that year were $2,604.05. These amounts were used by respondent in determining the cost of goods sold and expenses of the Newport Liquor Store, respondent having *347 consolidated the two operations as carried on by the Newport Liquor Store in reaching the contested deficiency. This deficiency was determined by respondent upon the basis of a partnership net income of $299,384.86, 50 per cent thereof constituting the taxable income of the petitioner. On May 13, 1943 the sum of $60,000 was withdrawn from the account of the partnership in the Merchants & Planters Bank by check signed "Myrtle Baxter - Jack Holder." On October 13, 1943 the sum of $60,000 was deposited to the account of Newport Liquor Store in that bank. On October 12, 1943 the partnership loaned $60,000 to the Tennessee Beverage Co. under circumstances not revealed. Subsequent to the winding up of the business of the Newport Liquor Store, in December 1943, Otha and Myrtle Baxter, together with the petitioner, were indicted in the District Court of the United States for the Eastern District of Tennessee for selling liquor in wholesale quantities without the authorization of a wholesale liquor license and for selling it for prices in excess of the maximum price allowed by the O.P.A. In this proceeding the defendants Otha and Myrtle Baxter appeared in person and by attorney. Petitioner *348 appeared by attorney and waived personal appearance. Pleas of guilty were entered for all three defendants on all four counts of the indictment and fines of $4,500 were imposed which were ordered by the court to be paid immediately. Of these fines $1,000 was imposed against the petitioner. The gross income of the partnership in its operation of the Newport Liquor Store for the calendar year 1943 exceeded by a substantial amount the sum deposited in its bank account for that year, and the net income of the partnership distributable to the petitioner for that year was substantially in excess of the amount reported by or for him upon the return filed for that year. Opinion The parties have stipulated that the figures used by respondent for cost of goods sold and for expenses, in determining the deficiency, are correct if respondent is right in consolidating the operations of the Newport Liquor Store and the Lucky Liquor Store as operations by the former. Although this issue is raised, absolutely no proof was introduced showing such consolidation to be unjustified. There has been no evidence presented to show just what the operations of the Lucky Store were, except intimations that *349 it was a business carried on with money furnished by the partnership doing business as the Newport Liquor Store, that it operated for a short period and then stopped, and then was transferred to the Newport Liquor Store and sold as part of its inventory. On this record, this consolidation by the respondent is approved. This leaves for consideration only one item, which is the amount of gross receipts of the business. If the sales by Newport Liquor Store were made at a price not less than the cost plus a mark-up of 33 1/3 per cent, the determination of the respondent is correct. Petitioner's counsel argues that the computation of the figure of gross sales is incorrect because it is in excess of the bank deposits made by the Newport Liquor Store during the year 1943. However, there is not one scintilla of evidence even tending to show that the entire gross income of the Newport Liquor Store was deposited in bank. For all this Court is advised, half or two thirds of the gross receipts may have been held out and not deposited. The amount of the gross receipts is to be determined by the price received for the liquor sold. The respondent's determination is that these sales were made *350 at a price of not less than cost plus a mark-up of 33 1/3 per cent, the maximum allowed by the O.P.A. There is absolutely no evidence tending to show that this determination is not correct. The record does not contain the testimony of a single witness or the record of a single sale at a figure below that used by the respondent in his determination. Only three witnesses testified for the petitioner. The petitioner was absent during the entire year 1943. He admitted that he did not know the price at which any of the liquor was sold and had no knowledge of the transactions of the Newport Liquor Store during that year. The other two witnesses were accountants who audited the so-called accounts of the Newport Liquor Store. Manifestly these two individuals had no personal knowledge of the operation of the business other than through the records they examined. These consisted of the invoices for liquor purchased, bank statements showing deposits and withdrawals and the canceled checks denoting the character of the withdrawals. Each of these accountants accepted and used in his audit the bank deposits as constituting the total gross receipts of the business. In the absence of proof that *351 the proceeds of all sales were deposited in bank, such audits carry no weight whatsoever in determining correctness of the ultimate figure of receipts. There were other witnesses who could have been called upon to testify as to the operations of the Newport Liquor Store. It had several employees who certainly would have had knowledge of liquor sales made at less than the price used by respondent if there were any such sales. And there is no indication that these witnesses were not available for use if petitioner's counsel had desired to call them. Moreover there were two persons, Otha and Myrtle Baxter, who operated the Newport Liquor Store during the year 1943 and who had full knowledge of its transactions. These two witnesses knew the price at which its stock of liquor was sold. They knew whether all of its receipts from sales were deposited to its bank account. Neither of these parties testified although the record shows affirmatively that they were both available. Petitioner testified that he talked with Otha Baxter just before he took the stand to testify, and had consulted with both of these individuals frequently during the weeks preceding the hearing. Even if the record *352 went no further than this, there would be no ground upon which we could hold the determination of respondent to be erroneous. However, it appears from certain of the records introduced by the petitioner that the contention that all the receipts of the Newport Liquor Store were deposited in bank is not correct. The partnership known as the Newport Liquor Store began business in August, 1941. For the period from that date to the first of January 1942, it reported net earnings of $13,830.51, and for the calendar year 1942 net earnings of $50,492.17. No partnership return was filed for the year 1943, but the individual tax return for that year filed for the petitioner reports a net income of one half of the earnings of the partnership for that year in the sum of $37,865.46. The accountant preparing this return testified he used the information on a partnership return he prepared after his audit of the partnership operations for that year. Using that last figure as one half the net earnings of the partnership, the net earnings for that year of the partnership were $75,730.92, or a total net earnings of $140,053.60 for the three years in which it operated. Petitioner admittedly received *353 distributions of earnings in 1943 of $50,937.48 in cash and $20,651.81 in payments by the partnership made for his account on account of his income taxes, or a total of $71,589.29. Since the payment of the $50,937.48 to petitioner upon the winding up of the partnership in December 1943 was made by an equal division of its bank account with Otha Baxter, it is apparent that, prior to such division, there had been distributed at least $20,651.81 to Otha and Myrtle Baxter, or total distributions to the partners of not less than $143,178.58, which lacks only $5,875.02 of the amount of the total earnings of the partnership through its entire existence plus the amount of $9,000 in capital invested. Keeping the above figures in mind, we turn to the evidence of payments made from the bank account of petitioner. There we find a distribution to Otha and Myrtle Baxter of $9,014.01, as the amount of their income tax, but there is no record of payment in the bank account of the partnership of $11,637.80 due them to offset the $20,651.81 distributed to petitioner by way of payment of his income taxes by the partnership. This $11,637.80 credit to Otha and Myrtle Baxter must have come out of the *354 earnings of the business without being withdrawn from the bank account of the business. In addition to this sum it is shown that petitioner withdrew $50 a week, or $2,600 a year, from the partnership during the year that he worked there. Myrtle Baxter is shown to have withdrawn $50 a week during the time that she worked in the store, which was approximately two years. Otha Baxter worked in the store, and it could hardly be assumed that his drawing account for his services was less than that of Myrtle Baxter. Upon this basis, approximately $13,000 was withdrawn in addition to the $143,178.58 shown above to have been withdrawn. It is further noted that shortly after the partnership was wound up and the purported distribution of its remaining cash in the sum of approximately $101,000, Otha and Myrtle Baxter and the petitioner were indicted in the United States District Court for the Eastern District of Tennessee for selling whiskey above the O.P.A. maximum price of cost plus 33 1/3 per cent. There were four counts in the presentment, each charging sales of liquor in considerable quantities to certain individuals at prices ranging from $60 to $70 a case. The three defendants pleaded *355 guilty to all four of these counts and paid fines on each totaling $4,500. Of this total, $1,000 was assessed against petitioner. The fines were ordered by the court to be paid forthwith, and it is a reasonable assumption that they were immediately paid. The petitioner, however, testified that these fines were paid by the partnership and that he was never called upon to pay any portion. From these facts one of two conclusions may be drawn. The first is that the so-called final distribution by the partnership, made in December preceding the indictment, was not in fact a final distribution but left the partners possessed of some undisclosed partnership income which had not yet been distributed but from which the fines were paid; or, second, that Otha and Myrtle Baxter paid from their individual funds their fines together with that assessed against petitioner, and never called on the latter for repayment. The latter conclusion is difficult to believe. It may be mentioned that the plea of guilty to this indictment establishes the fact to our satisfaction that in 1943 the partnership was selling liquor at prices in excess of cost plus 33 1/3 per cent, thus at least sustaining respondent's *356 determination that the sales during that year were at an average of cost plus 33 1/3 per cent. Of further interest is the fact that the accountant employed by the partnership to make the two audits hereinbefore referred to, eliminated from the deposits one of $60,000 made on October 13, 1943, offsetting that deposit by a withdrawal of $60,000 in cash money by the bank statement and canceled check to have been made on May 13, 1943. It is claimed that the $60,000 deposit on October 13 was merely a redeposit of $60,000 withdrawn on May 13, and that the transaction in question was a loan of $60,000 to the Tennessee Beverage Co. in that amount. No proof was offered as to the circumstances of such loan. Petitioner's counsel refers to the withdrawal of $60,000 on May 13, 1943 as the check to the Tennessee Beverage Co. The check in question is not to that company but to cash, and if we are to connect the two transactions, as argued by petitioner's counsel, we must assume that $60,000 was withdrawn in May, held in that form until October 12, then loaned to the Tennessee Beverage Co. and repaid by it either on the same day or the following day. If a loan was actually made to the Tennessee *357 Beverage Co., there is no evidence in the record that it was ever repaid. In view of the fact that there is no evidence in the record even tending to show that the determination of the respondent is in error, and substantial evidence to support that determination, together with positive evidence showing to our satisfaction that the income of the partnership was materially in excess of the income it reported as distributable to the partners, we hold that the petitioner has failed to sustain his burden of showing the determination of the respondent to be in error. Decision will be entered for the respondent.